

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| THE GARVEY CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04 C 6960 |
| ) | |
| BARRY-WEHMILLER DESIGN GROUP, ) | Judge Ruben Castillo |
| INC. and FLEETWOOD, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER AND OPINION

The Garvey Corporation ("Garvey") sued Barry-Wehmiller Design Group, Inc. ("Design Group") and Fleetwood, Inc. ("Fleetwood") (collectively "Defendants") alleging patent infringement and violation of the Illinois Trade Secret Act, 765 Ill. Stat. Comp. 1065/1-1065/9. Garvey requests that this Court preliminarily enjoin Defendants from infringing on its patents. For the reasons provided below, we grant Garvey's motion for a preliminary injunction.

## RELEVANT FACTS

Garvey manufactures product accumulators. (R. 23, Pl.'s Mem., Ex. 1, Garvey Decl. ¶ 6.) A product accumulator is a device used to temporarily store products as they are conveyed along a production line. (*Id.* ¶ 7.) Garvey has five patents covering various aspects of product accumulation technology. (*Id.* ¶ 12.) Two of these patents are involved in this action: U.S. Patent Nos. 6,575,287 ("the '287 patent") and 6,648,124 ("the '124 patent").

Defendants are both divisions of the Barry-Wehmiller Company. (*Id.*, Ex. 2, Palandrani Decl. ¶ 16.) Design Group is a consulting company specializing in the packaging industry, (R. 31, Defs.' Mem., Ex. 2, Cheney Decl. ¶¶ 3-5), and Fleetwood manufactures conveyor

systems, including product accumulators, (*id.*, Ex. 3, Paquin Decl. ¶¶ 3-5). In particular, Fleetwood manufactures the Continuous Motion Accumulation System ("CMAS") product accumulator, which Garvey accuses of infringing on its patents.

This dispute arises out of an E&J Gallo Winery ("Gallo") bottling production line project. Design Group, along with several other engineering companies, submitted a proposal to Gallo to design and install a new bottling production line. (R. 23, Pl.'s Mem., Ex. 2, Palandrani Decl. ¶¶ 6-8.) Design Group's proposal incorporated Garvey's product accumulators. (*Id.* ¶¶ 6, 8-9, 16.) Garvey had provided Design Group with confidential and proprietary information about their product accumulators to help ensure that Gallo would accept Design Group's proposal and ultimately purchase its product accumulators. (*Id.*) Gallo accepted Design Group's proposal and hired Design Group to assist it with selecting vendors and to install the production line. (*Id.* ¶ 11.) Gallo ultimately selected Fleetwood, presumably on Design Group's recommendation, to manufacture two CMAS product accumulators for this new production line. (*Id.* ¶ 13.)

## LEGAL STANDARDS

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (quoting Wright, Miller, & Kane, 11A Federal Practice & Procedure § 2948, 129-130 (2d ed. 1995). To carry this burden, the movant must first clearly show (1) a reasonable likelihood of success on the merits and (2) irreparable harm in the absence of a preliminary injunction. *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324-25 (Fed. Cir. 2004). In patent cases, a movant who establishes a reasonable likelihood of success on the merits is entitled to a rebuttable

presumption of irreparable harm. *Ranbaxy Pharms. Inc. v. Apotex, Inc.*, 350 F.3d 1235, 1239 (7th Cir. 2003). Once the movant has demonstrated these two factors, it must then demonstrate (3) a balance of hardships tipping in its favor and (4) the injunction's favorable impact on the public interest. *Nat'l Steel Car*, 357 F.3d at 1324-25. The movant's failure to demonstrate either of these additional factors is not dispositive because the court must balance all four factors when deciding whether the preliminary injunction should issue. *Id.* (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).

## ANALYSIS

At the outset, we deny Garvey's motion for a preliminary injunction with respect to the '124 patent. Garvey failed to provide this Court with sufficient arguments or analysis to permit us to determine that it is reasonably likely to prove that Fleetwood's CMAS product accumulator infringes on the '124 patent. Garvey's '124 patent infringement argument in its opening brief consists of the following sentence:

> Utilizing the same methodology, Mr. Palandrani opines, to a reasonable degree of engineering certainty, that all of the elements of claim 1 and 11 of the '124 Patent are also found in the product purchase [sic] by Gallo and built by Fleetwood.

(R. 23, Pl.'s Mem. at 12 & Ex. 2, Palandrani Decl. ¶¶ 42-43.) Its infringement argument in its reply brief is just as brief:

> When the claims are read properly, and utilizing the correct definitions for the relevant claim terms, the accused device literally infringes the claims of the '124 Patent and the '287 Patent.

(R. 35-2, Pl.'s Reply at 14.) The only time that Garvey discusses the '124 patent's claim language is in its means-plus-function infringement argument, but for the same reasons provided below, *see infra* note 4, we do not construe the '124 patent's second conveying means as a

means-plus-function limitation. (*Id.* at 14-16.) The remainder of this opinion therefore focuses solely on whether Garvey is reasonably likely to succeed on its '287 patent infringement claim.

I.  **Reasonable Likelihood of Success**

Defendants have not challenged the validity of the '287 patent, so we only need to determine whether it is reasonably likely that Garvey can prove that Fleetwood's CMAS product accumulator infringes on the '287 patent. *See Bell & Howell Document Mgmt Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705 n.4 (Fed. Cir. 1997). To do so, we must first construe the disputed claim terms by examining the intrinsic evidence of record, which is the patent's claims, specification or written description, and prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Claim terms should be accorded their ordinary meanings unless the patentee expressly defined them differently or their ordinary meanings would render the claim meaningless or unamenable to construction.[1] *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 318 F.3d 1143, 1148 (Fed. Cir. 2003). The written description can be used to construe claim terms, but cannot limit or expand the claims' scope. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004); *PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004). The prosecution history can limit the scope of a patent's claims if the patentee expressly disclaimed a particular claim construction while prosecuting the patent. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). After considering all of the intrinsic evidence, we may then consider relevant extrinsic

---

[1] "Dictionaries are always available to the court to aid in the task of determining meanings that would have been attributed by those of skill in the relevant art to any disputed terms used by the inventor in the claims." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002).

4

evidence. *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1374 (Fed. Cir. 2002).

Conveyor is the only disputed claim term that we must construe in order to determine Garvey's likelihood of success.[2] This term is used in claim 1 when describing the second conveying means:

> (b) second conveying means for receiving products from the first conveying means, for accumulation and movement of products on and around the second conveying means and for delivery of products to the first conveying means for movement to the downstream destination, said second conveying means solely comprising a single, continuous looped path, curvilinear shaped *conveyor*, the conveyor path being substantially located in the same transverse plane as the first conveying means, at least one section of the second conveying means being in substantial adjacent alignment with at least one section of the first conveying means, both conveying means, at all times when in adjacent alignment, moving in the same direction.

(R. 27, Defs.' Resp., Ex. 1, U.S. Patent No. 6,575,287, col. 7, lines 7-20 (emphasis added).) The ordinary meaning of conveyor, according to Merriam-Webster's Online Dictionary, is a "mechanical apparatus for moving articles or bulk material from place to place (as by an endless moving belt or a chain of receptacles)." Merriam-Webster's Online Dictionary, *at* http://www.m-w.com (last visited March 18, 2005). A more technical definition of conveyor, found in the IoPP Glossary of Packaging Terminology, provides a slightly broader definition:

> A horizontal, inclined, or vertical device for moving or transporting bulk materials, packages, or objects in a path predetermined by the design of the device and having points of loading and discharge fixed, or selective; included are skip hoists and vertical reciprocating and inclined reciprocating conveyors. Typical exceptions are

---

[2] The parties also have a small grammatical dispute: whether conveyor is modified by the preceding term "single." We find that "single" modifies "conveyor" because the indirect article "a" modifies conveyor and indicates that conveyor is a singular word. Furthermore, claim 32 uses the phrase "continuous looped path of the conveyor," which also indicates that "single" should modify "conveyor." (R. 27, Defs.' Resp., Ex. 1, U.S. Patent No. 6,575,287, col. 10, lines 37-38.)

those devices known as industrial trucks, tractors and trailers, tiering machines (truck-type), cranes, hoists, monorail cranes, power and hand shovels, power scoops, bucket drag lines, platform elevator or conveyor designed to carry passengers or the elevator operator, and highway or rail vehicles. Basically a conveyor is made up of one or more sections that transfers (via an intermittent or continuous media) such inputs (bottles, bags, caps, cartons, product, etc.), packages, cases, or pallets from one location or position to another. Each section may be driven independently at varying speeds or employ gravity as a method of transfer.

Institute of Packaging Professionals, IoPP Glossary of Packaging Terminology (Walter G. Soroka & Paul J. Zepf eds., 1998). Using these definitions, we find that the ordinary meaning of conveyor is: "a device for moving products in a path predetermined by the design of the device." We relied more on the technical definition than the ordinary definition because: (1) it provides "the full range of [conveyor's] ordinary meaning as understood by persons skilled in the relevant art," *Texas Digital*, 308 F.3d at 1202; (2) "device" is more appropriate than "mechanical apparatus" because some conveyors, such as gravity-powered slides, have no mechanical parts; and (3) "in a predetermined path" is more appropriate than "from place to place" because it distinguishes industrial devices such as forklifts and cranes.

Defendants asserted during the preliminary injunction hearing that the term conveyor should be limited by the patent's written description to conveyors that are "constructed of interlocked segments." (Col. 4, line 14.) The written description can be used to construe claim terms, but it cannot be used to limit the scope of the patent's claims. *Liebel-Flarsheim*, 358 F.3d at 904. Accordingly, we decline to incorporate this limitation into our construction of the term conveyor. Defendants also assert that Garvey disclaimed the use of multiple conveyors while prosecuting this patent. (R. 27, Def.'s Resp. at 11.) Garvey's disclaimer, however, has already been incorporated into the patent's claims because the second conveying means solely comprises

a single conveyor. After reviewing the patent's claims, written description, and prosecution history, we accord the term conveyor the ordinary meaning provided above because this construction does not render any claim language meaningless or unamenable to construction.[3] *See Prima Tek*, 318 F.3d at 1148.

Using this claim construction, we must now compare the '287 patent's claims to Fleetwood's CMAS product accumulator to determine if Garvey is reasonably likely to prove that Fleetwood's product accumulator literally infringes on the '287 patent's claims. "[L]iteral infringement requires that each and every limitation set forth in a claim appear in an accused product."[4] *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Intern., Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004). Defendants assert that Fleetwood's CMAS product accumulator does not infringe on the '287 patent's claims. Specifically, Defendants contend that the CMAS product accumulator does not contain a second conveying means that "solely compris[es] a single, continuous looped path, curvilinear shaped conveyor" because the CMAS product

---

[3] Garvey also requested that this Court construe the term conveyor as a device that moves articles from place to place in the same direction or without reversing their direction. (R. 35-2, Pl.'s Reply at 11.) There is nothing in the patent to support this construction, and Garvey provides no extrinsic evidence other than a self-serving declaration. Moreover, Garvey, while prosecuting this patent, distinguished prior art because it used "various conveyors, traveling in opposite directions." If a conveyor by definition never reverses direction, Garvey would not have specified that those conveyors "travel[ed] in opposite directions." (R. 27, Defs.' Resp., Ex. 7, Prosecution History at 5.) Thus, we also reject Garvey's proposed construction.

[4] We find that means-plus-function infringement is not applicable to this case because claim 1 specifically defines the second conveying means as "solely comprising a single, continuous looped path, curvilinear shaped conveyor." *See Searfoss v. Pioneer Consol. Corp.*, 374 F.3d 1142, 1149 (Fed. Cir. 2004) (holding that limitation was not a means-plus-function limitation because it "specifically recite[d] the structure that performs the claimed function").

accumulator utilizes a second conveying means that uses two independent, U-shaped "conveyors."[5]

We must now determine whether it is reasonably likely that a jury will find that Fleetwood's CMAS product accumulator contains a single, continuous looped path, curvilinear shaped *device for moving products in a path predetermined by the design of the device*. While a jury could conclude that Fleetwood's CMAS product accumulator's "conveyors" are separate devices, it is much more likely that the jury will find that they are different sections of one device. First, the CMAS product accumulator's "conveyors" convey products in a predetermined, continuous looped path. Defendants conceded this fact during the preliminary injunction hearing. Second, the CMAS product accumulator only functions if both "conveyors" are operating. Defendants conceded this fact during the preliminary injunction hearing. Third, the CMAS product accumulator's "conveyors" are constructed as one unit and share a single guide wall. Defendants' witness Claude Paquin stated this during the preliminary injunction hearing. For these reasons, we find that Garvey is reasonably likely to prevail at trial.

We are unpersuaded that a jury would find that Fleetwood's CMAS product accumulator's "conveyors" are separate devices because they can be run at different speeds. First, the CMAS product accumulator was not designed to capture the benefit of operating these "conveyors" at different speeds. At the preliminary injunction hearing, Paquin stated that this benefit was discovered while test-running the CMAS product accumulator. Additionally, the documents presented at the preliminary injunction hearing indicate that the CMAS product

---

[5] We use quotations when referring to CMAS's "conveyors" because a jury must determine whether these "conveyors" are multiple conveyors or multiple sections of a conveyor.

accumulator was designed to increase accumulation density not to capture the differential speed benefits.[6] Second, the benefit of running conveyors at different speeds was disclosed in the '287 patent's written description: "optimal performance for such product appears to be obtained by varying conveyor speeds only slightly." (R. 27, Defs.' Resp., Ex. 1, U.S. Patent No. 6,575,287, col. 4, lines 35-37.) We recognize that the '287 patent is referring to the interaction between the first conveying means and the second conveying means and only mention this language to demonstrate that operating conveyors at different speeds is not novel. Third, the technical definition of "conveyor" provided above explicitly states that different sections of a conveyor "may be driven independently at varying speeds." IoPP Glossary of Packaging Terminology. Finally, the '287 patent claim contains no limitations related to the speed at which the conveyor must operate. For the reasons, we find that Defendants' literal infringement defense is unlikely to prevail at trial.[7]

---

[6] Accumulation density compares the available accumulation space to the space needed to install the product accumulator.

[7] We cannot find that Garvey is reasonably likely to prevail under the doctrine of equivalents because Garvey has not shown that it is reasonably likely to rebut the *Festo* presumption of prosecution history estoppel. (*See* R. 27, Defs.' Resp., Ex. 7, Prosecution History at 5 for the relevant prosecution history and R. 25, Pl.'s Reply, Ex. 1, U.S. Patent No. 4,401,207 for the relevant prior art.) If Garvey is not estopped, we would find that Garvey is reasonably likely to prevail at trial under the doctrine of equivalents. "Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result." *Business Objects, S.A. v. Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed. Cir. 2005). Defendants have not identified any differences between the claimed limitation and the accused product that a jury is reasonably likely to deem substantial.

## II. Irreparable Harm

As Garvey has clearly shown a reasonable likelihood of prevailing at trial, it is entitled to a rebuttable presumption of irreparable harm. *Ranbaxy*, 350 F.3d at 1239; *see also Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003).

> It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole. The patent statute provides injunctive relief to preserve the legal interests of the parties against future infringement which may have market effects never fully compensable in money. If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts.

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988) (internal quotations and citations omitted). Defendants have not attempted to rebut this presumption. To the contrary, they only argue that Garvey's argument is speculative and unsubstantiated. (R. 27, Defs.' Resp. at 16.) Defendants have not rebutted the presumption of irreparable harm, so Garvey has clearly demonstrated that it will suffer irreparable harm unless Defendants are preliminarily enjoined.[8]

## III. Balance of Hardships and the Public Interest

We will now address the final two factors: balancing the hardships and the public interest. To balance the hardships, we must compare the hardship that the lack of a preliminary injunction would have on Garvey with the hardship that the preliminary injunction would impose on Defendants. *Nat'l Steel Car*, 357 F.3d at 1324-25. Defendants would be harmed by the preliminary injunction because Fleetwood would not be able to sell its CMAS product

---

[8] Even in the absence of the presumption, we would find that Garvey would be irreparably harmed because continued infringement would injure its market share, the good will of its customers, and its reputation for innovation.

accumulator during the pendency of this litigation. Garvey would be harmed by the absence of the preliminary injunction because it would be forced to compete with Fleetwood. On balance, the hardship to Garvey would be greater because; (1) the absence of a preliminary injunction would harm more than Garvey's bottom line, *see* note 8 *supra*; (2) Fleetwood manufactures more than just product accumulators so a preliminary injunction is unlikely to devastate the company, (*see* R. 31, Defs.' Mem. at 3-4); (3) Fleetwood was aware of Garvey's patents so assumed the risk that its product would infringe, *see Rubbermaid Commercial Prods., Inc. v. Contino Int'l Inc.*, 836 F. Supp. 1247, 1258 (W.D. Va. 1993); and (4) Garvey has offered to post a bond, pursuant to Federal Rule of Civil Procedure 65(c), to cover Defendants' costs or damages in the event they are wrongfully enjoined, (*see* R. 23, Pl.'s Mem at 17-18).

Finally, Defendants assert that the public interest in enforcing valid patents is outweighed by the public interest in competition and product availability. *See Hybritech*, 849 F.2d at 1458. A competitive marketplace is in the public interest, but patents are protected from infringement to ensure that individuals continue to innovate so that the marketplace will remain competitive. We are also unpersuaded that a preliminary injunction will create a product accumulator shortage. Even if Garvey's product accumulators cannot satisfy all of the market demand, there are many other types of product accumulators available. We cannot foresee that any negative effect our preliminary injunction will have on this niche market outweighs the public's strong and recognized interest in enforcing valid patents. Thus, a preliminary injunction will not injure a critical public interest. *Id.*

## CONCLUSION

All four factors support a preliminary injunction. We therefore grant Garvey's motion for a preliminary injunction. Pursuant to Federal Rule of Civil Procedure 65 and 35 U.S.C. § 238, we hereby preliminarily enjoin Defendants—and any subsidiaries, affiliates, divisions or related companies together with any persons and entities in active concert or participation with them—from manufacturing, displaying, promoting, marketing, selling, shipping, distributing, or installing the accused infringing product: Fleetwood's CMAS product accumulator. Pursuant to Federal Rule of Civil Procedure 65(c), we also order Garvey to post a $1,000,000 security bond within seven business days to adequately secure this order. A status hearing is set for April 6, 2005 at 9:45 a.m. for the express purpose of setting a discovery cut-off date, pre-trial briefing schedule, and trial date. Having entered a preliminary injunction, this Court intends to reach the merits of this case as quickly as possible.

ENTERED: _____
**Judge Ruben Castillo**
**United States District Court**

**Dated: March 24, 2005**